**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| GUTTEMBERG DIAS DE SOUZA, LINDOMBERG DIAS DE SOUZA, MELVA MENDEZ, FRANK CRUZ, MATHEWS CARDEAL, and SANTIAGO TEJEDA, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>AMERICAN USED AUTO PARTS, INC., NEW AMERICAN USED AUTO PARTS, INC., D&B AUTO BODY COLLISION, INC., ALEX ROSA, an individual, and WENDY DIAZ, an individual,<br><br>        Defendants. | Civ. No.: 4:25-cv-40077-MRG |

<u>**ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS [ECF No. 18]**</u>

**GUZMAN, J.**

## I.    <u>INTRODUCTION</u>

Plaintiff-employees Guttemberg Dias De Souza, Lindomberg Dias De Souza, Melva Mendez, Frank Cruz, Santiago Tejeda, and Mathews Cardeal, bring this suit individually and on behalf of all other similarly situated putative class members (collectively, "Plaintiffs") against their former employers, New American Used Auto Parts, Inc., D&B Auto Body Collision, Inc., Alex Rosa, and Wendy Diaz ("Defendants"), alleging that Defendants failed to pay legally required minimum and overtime wages, engaged in unlawful deductions, retaliation, discrimination, and trafficking-related exploitation. [Am. Compl., ECF No. 16].

1

The Amended Complaint alleges eight causes of action:[1] Count I: failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. *et seq.* (on behalf of the named Plaintiffs and FLSA collective); Count II: failure to pay minimum wage in violation of the Massachusetts Minimum Fair Wage Law ("MFWL"), Mass. Gen. Laws ch. 151, §§ 1, 7 (on behalf of the named Plaintiffs and the Massachusetts Overtime Class); Count III: failure to pay overtime wages in violation of the overtime provisions of the MFWL ("MA Overtime Statute"), Mass. Gen. Law ch. 151, §§ 1A, 1B (on behalf of the named Plaintiffs and the Massachusetts Overtime Class); Count IV: unlawful retaliation in violation of the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3) (on behalf of the named Plaintiffs and the Massachusetts Overtime Class); Count V: unlawful retaliation in violation of both the MFWL, Mass. Gen. Laws ch. 151, §§ 19(1),(5) and the Massachusetts Wage Act ("MWA"), Mass. Gen. Laws ch. 149, § 148A (on behalf of the named Plaintiffs and the Massachusetts Employee Class); Count VI: violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595 *et seq.* (on behalf of the named Plaintiffs and the Massachusetts Employee Class); Count VII: violation of the Massachusetts Civil Rights Act ("MCRA"),  Mass. Gen. Laws ch. 12, §§ 11H & 11I[2]; Count VIII: violation of the Massachusetts Equal Rights Act ("MERA"), Mass. Gen. Laws ch. 93, § 102.[3]

---

[1] The Court refers to the counts in the Amended Complaint as "alleged causes of action" without deciding at this stage in the opinion whether the counts as listed actually state viable causes of action.

[2] The Amended Complaint does not specify which plaintiffs or subclass are bringing this claim, so the Court construes it to allege a claim only on behalf of the named Plaintiffs. If Plaintiffs intend to press these claims as class claims, they will have to amend the Amended Complaint again to make clear that these claims are brought on behalf of a class, as well as specify which class they mean. See Maine Ass'n of Retirees v. Bd. of Trs. of Maine Pub. Emps. Ret. Sys., No. 1:12-CV-59-GZS, 2012 WL 5874783, at *2 (D. Me. Nov. 20, 2012)

[3] Plaintiffs likewise fail to specify which plaintiffs or subclass are bringing this claim, so the Court construes the Amended Complaint as alleging a claim only on behalf of the named Plaintiffs. If Plaintiffs intended otherwise, they will have to move for leave to amend to make this change. See FN 2, supra.

Before the Court is Defendants' Partial Motion to Dismiss, where Defendants move to dismiss only Counts II, III, V, and VI. Defendants argue that such claims are legally insufficient and must be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

For the reasons set forth below, the Defendants' Motion to Dismiss, [ECF No. 18], is **DENIED IN PART AND GRANTED IN PART**.

## II.    BACKGROUND

The following relevant facts are taken primarily from the allegations in Plaintiffs' Amended Complaint, [Am. Compl.], and are accepted as true for purposes of this motion. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)"). All plausible inferences are made in Plaintiffs' favor. Id.

### A.  Relevant Facts

The corporate Defendants in this case are American Used Auto Parts, Inc., New American Used Auto Parts, Inc., and D&B Auto Body Collision, Inc., [Am. Compl. ¶¶ 3–5]; the individual Defendants are Alex Marciel Rosa and Wendy Diaz who are joint employers. [Id. ¶¶ 6–7, 43]. The Defendants run an auto shop business in Massachusetts. [Id. ¶ 42]. Plaintiffs were collectively employed by Defendants for over twenty years, in positions including office staff, mechanics, and drivers. [Id. ¶¶ 9, 21]. Plaintiffs allege that during their employment, they regularly worked more than 70 hours a week without proper remuneration for their overtime hours.  [Id. ¶¶ 22–24]. They further allege that Defendants only paid them their regular hourly rates, failing to provide overtime wages for hours exceeding forty per workweek. [Id. ¶¶ 23–24]. In addition, Plaintiffs assert that

Defendants deducted amounts ranging from $50-$250 dollars from employees' weekly paychecks, citing payroll service fees as the basis for the deductions. [Id. ¶ 25].

Beyond the allegations of improper wage practices, Plaintiffs assert that Defendants retaliated against employees through physical and legal means when Plaintiffs challenged Defendants' authority or attempted to resign. [Id. ¶¶ 28–35]. Plaintiff Dias De Souza alleges that Defendant Rosa tried to physically attack him when Dias De Souza told the Defendants he would seek a legal remedy for his lost wages, and for those similarly situated. [Id. ¶ 28]. In approximately late February to early March 2025, Plaintiff Cardeal notified Defendants of his intent to resign, and, in response, Defendant Rosa filed a police report with the Worcester Police Department accusing Cardeal of theft. [Id. ¶¶ 30–31]. Plaintiffs allege that in the suit, Defendants demanded nearly $13,000 from Cardeal, claiming that he had stolen from them. [Id. ¶ 32]. Plaintiffs assert that the outstanding complaint against Cardeal negatively impacted his prospective employment with a state agency. [Id. ¶¶ 34–35].

Plaintiffs also allege that Defendants created a hostile work environment through discriminatory and coercive practices. [Id. ¶¶ 36–41]. Defendants made racially derogatory remarks, including referring to employees as "monkeys" and wrote such remarks on employees' paychecks. [Id. ¶¶ 36–37]. Plaintiffs assert that Defendants sexually harassed some female employees and reduced their pay when they resisted Defendants' advances. [Id. ¶ 38]. Certain employees with histories of substance abuse were allegedly supplied with drugs during their employment, and in some instances, Defendants required payments from immigrant employees as a condition of continued employment. [Id. ¶¶ 39–40]. Defendants purportedly pressured immigrant employees to work excessive hours, citing their immigration status as a justification for the overtime work. [Id. ¶ 41].

4

### B. Procedural History

Plaintiffs commenced this action by filing a complaint in this Court on June 9, 2025. [ECF No. 1]. In July 2025, Defendants moved to dismiss the complaint and filed an answer. [ECF Nos. 13, 15]. On July 23, 2025, Plaintiffs filed an Amended Complaint, which became the operative pleading. [ECF No. 16]. In response, Defendants timely filed an answer to the amended complaint on July 29, 2025, together with a renewed motion to dismiss. [ECF Nos. 17, 18]. Plaintiffs filed an opposition to the renewed motion to dismiss on August 12, 2025. [ECF No. 19].

## III. Legal Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On a motion to dismiss made pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)). The plausibility standard does not impose a probability requirement; it requires only enough facts to allow the Court to reasonably infer liability. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556.

Bare allegations and legal conclusions and/or a "formulaic recitation of the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555. Although a complaint "does not need detailed factual allegations, a plaintiff's obligations to provide the grounds of [their] entitlement to relief requires more than labels and conclusions." Id. (internal quotations omitted). While a plaintiff is entitled to all reasonable inferences from the facts alleged, his legal conclusions are not

entitled to deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

### IV.  **DISCUSSION**

In their Renewed Motion to Dismiss, Defendants move this Court to dismiss Plaintiffs' state and federal claims for Counts II, III, V and VI on four grounds: (1) failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); (2) failing to obtain the requisite right to sue letters; (3) failing to pierce the corporate veil by naming two individuals as parties in this lawsuit; and (4) failing to file a complaint on behalf of one of the Defendants within the statute of limitations. [ECF No. 18 at 1–2].  Although the arguments made by Defendants are sparse,[4] the Court must do its diligence to analyze the contested claims at this juncture.

#### A.  **Counts II, III, & V**

Defendants argue that Plaintiffs' state-law wage claims must be dismissed because Plaintiffs "failed to properly bring this action before the Massachusetts Attorney General or obtain the requisite right-to-sue letters," pursuant to Mass. Gen Laws ch. 149, § 150 and Mass. Gen. Laws c. 151, § 20. [ECF No. 18 at 4]. As a preliminary matter, Defendants' citations to Mass. Gen. Laws ch. 149, § 150 and Mass. Gen. Laws c. 151, § 20 do not cover all the state-law wage claims in the Amended Complaint. First, Mass. Gen. Laws ch. 151, § 20 does not require administrative exhaustion; indeed, there is no language in the statute that could reasonably be construed as an exhaustion requirement.[5] The sole mention of the attorney general ("AG") stipulates that the AG

---

[4] The Court notes that Defendants' renewed motion to dismiss is little more than a bullet-pointed outline, contains only one citation to case law, and is generally deficient in raising substantive arguments in support of the motion to dismiss. [See ECF No. 18]. Still, in an effort to promote efficient resolution of this case, the Court endeavors to construe Defendants' conclusory arguments liberally where Plaintiffs have plainly failed to state a claim.

[5] Mass. Gen. Laws ch. 151, § 20 reads as follows:

may take an assignment of an employee's wage claim in trust and bring a legal action on their behalf. Second, Mass. Gen. Laws ch. 149, § 150 applies to only certain causes of action under specific state laws that are enumerated in the statute. The only claim in the Amended Complaint which falls in this list of applicable state laws is Count V: unlawful retaliation in violation of both the MFWL, Mass. Gen. Laws ch. 151, §§ 19(1), (5) and the Massachusetts Wage Act ("MWA"), Mass. Gen. Laws ch. 149, § 148A.[6] While the statute does not refer specifically to causes of action Mass. Gen. Laws ch. 151, §§ 1, 1A, 1B, the Massachusetts Supreme Judicial Court ("SJC") has also recognized the exhaustion requirement in Mass. Gen. Laws ch. 149, § 150 for violations of those statutes. See Depianti v. Jan-Pro Franchising Int'l, Inc., 990 N.E.2d 1054, 1060, 1062 (Mass. 2013). Therefore, Plaintiff's claims under those provisions, Count II and III, are subject to the exhaustion requirement. Accordingly, upon its own research for supporting law, the Court concludes Defendants have properly challenged Counts II, III, and V.

Having determined that the exhaustion provision of Mass. Gen. Laws. ch. 149, § 150 ("Section 150") applies to all three counts challenged by the Defendants, the Court turns to the substance of that provision. Section 150 requires an individual alleging a violation of the wage statutes alleged in Counts II, III, and V to first file a complaint with the Massachusetts AG. Mass. Gen. Laws. ch. 149, § 150. The plaintiff must then wait ninety days before filing suit, although

---

> If a person is paid by an employer less than the minimum fair wage to which the person is entitled under or by virtue of a minimum fair wage regulation, . . . the person may institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred and for the full amount of the minimum wages less any amount actually paid to him by the employer. . . . At the request of any employee paid less than the minimum wage to which he or she is entitled the attorney general may take an assignment of such wage claim in trust for the assigning employee and may bring any legal action necessary to collect such claim, . . . .

[6] The exhaustion provision in Mass. Gen. Laws ch. 149, § 150 only applies to violations of Mass. Gen. Laws "sections 33E, 52E, 148, 148A, 148B, 148C, 150C, 152, 152A, 159C or 190 or section 19 of chapter 151." Mass. Gen. Laws ch. 149, § 150.

this timeline may be shortened if the AG assents to the suit sooner. Id. Section 150 further stipulates that any private action much be brought within three years of the violation. Id.

i.    *Administrative Exhaustion (M.G.L. c. 149, § 150)*

Defendants argue that Plaintiffs have failed to comply with the exhaustion requirements of Section 150. Plaintiffs assert that they obtained authorization to sue from the AG in the form of letters from the Attorney General's Office ("AGO"). [ECF No. 19 at 7]. Defendants contend that Plaintiffs' letters do not grant the Plaintiffs a right to sue but just "detail potential violations." [ECF No. 18 at 4]. Defendants also note that only five of the six Plaintiffs obtained letters from the MA AGO, and that Plaintiff Gutenberg Diaz de Souza failed to provide a letter. [Id.]

In their opposition brief to the Motion to Dismiss, [ECF No. 19], Plaintiffs attached their receipt for filing with the AGO and the subsequent right-to-sue letters, including one for Plaintiff Gutenberg Diaz de Souza. [See ECF No. 19-1].[7] It is apparent from the letters provided that each Plaintiff in this case was granted a right-to-sue letter from the MA AGO in compliance with their administrative requirements. [Id.] Additionally, each right-to-sue letter notes that Plaintiffs "may bring an action on [their] own or . . . on behalf of other similarly situated workers." [Id.] Therefore, claims of similarly situated plaintiffs within the putative class have also met the administrative requirements.

ii.    *Adequacy of the Attorney General's Authorization Letters*

Defendants contend that the AG's authorization letters are deficient because they reference § 52C violations (personal record-keeping) rather than the minimum wage and overtime payment violations, or the retaliation claims alleged under Counts II, III, and V. [ECF No. 18 at 4]. This

---

[7] The Court may consider certain documents the authenticity of which are not disputed by the parties, official public records, documents central to Plaintiffs' claim, and documents sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993) (collecting cases). Whether Plaintiffs filed a notice with the Massachusetts Attorney General's Office is central to Plaintiffs' claims.

argument mischaracterizes the function of AG's authorization letters.[8] The filing requirement serves to provide the Attorney General with notice of potential wage violations so that the office may investigate or prosecute at their discretion. Once the Attorney General issues an authorization letter, it merely confirms that the statutory prerequisite has been satisfied and permits the plaintiff to pursue the claims privately. See Depianti, 990 N.E.2d at 1061 ("The requirement that a plaintiff file a complaint with the Attorney General before bringing a private suit is intended simply to ensure that the Attorney General received notice of the alleged violations, so that she may investigate and prosecute such violations at her discretion."); Nahigian v. Leonard, 233 F.Supp.2d 151, 164 (D. Mass. 2002) ("the purpose of Section 150's administrative requirement, rather than giving potential defendants notice and an opportunity to conciliate, seems to be to give the *Attorney General* notice that a crime [failure to pay wages] may be occurring" (emphasis in original)).

In the Amended Complaint, Plaintiffs state that they "submitted their statutory claims with the Office of the Attorney General and requested a Right-to-Sue letter." [Am. Compl. ¶ 48]. The subsequent responses from the Attorney General acknowledged receipt of Plaintiffs' request for their right-to-sue and provided written assent to proceed. [ECF No. 19-1]. The notice function has therefore been satisfied.

Accordingly, Defendants' Renewed Motion to Dismiss as to Counts II, III and V is **DENIED**.

### B.  Count VI: TVPRA Claim

---

[8] Moreover, Defendants' argument rests on a factual premise that is not borne out by the record, as none of the Attorney General's authorization letters actually reference a violation of Mass. Gen. Laws ch. 149, § 52C. [See ECF No. 19-1].

In Count VI, Plaintiffs assert claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595 *et seq.*, based on allegations of forced labor. [Am. Compl. ¶¶ 28–35, 39–41, 68–70]. Defendants advance three overarching arguments for dismissal: (1) 18 U.S.C. § 1589 ("Section 1589") provides only criminal penalties without a private right of action; (2) any civil claim is premature absent pending criminal proceedings; and (3) the action should have been filed under seal pursuant to 18 U.S.C. § 1595(a). [ECF No. 18 at 2–3]. The Court addresses each argument before turning to the sufficiency of Plaintiffs' factual allegations.

### i.    Private Right of Action

Defendants' arguments concerning the private right to action enumerated under 18 U.S.C. 1595 demonstrate a misunderstanding about the statutory framework of the TVPRA. Congress passed the Trafficking Victims Protection Act of 2000 ("TVPA"), establishing various criminal offenses concerning human trafficking. Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464 (2000); 22 U.S.C. §§ 7101-7114. One of those offenses was providing or obtaining forced labor, which became a crime under 18 U.S.C. § 1589 ("Section 1589" or "§ 1589"). Three years later, Congress passed the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA") which created a private right of action under 18 U.S.C. § 1595, providing victims of the various human trafficking violations enumerated by the TVPA a cause of action and civil remedy against perpetrators of the violations.[9] Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, 117 Stat. 2875 (2003); Nestle USA, Inc. v. Doe, 593 U.S. 628, 638 (2021) (opinion of Thomas, J.) (outlining the history of the TVPA and TVPRA); see McLeod

---

[9] The TVPRA was amended in January 2006, Pub. L. 109-164, section 1(a), 119 Stat. 3558, and again in December 2008, Pub. L. 110-457, section 1(a), 122 Stat. 5044 (Dec. 23, 2008). Congress has modified the language and protections of these statutes under varying names over the course of the last twenty-five years. Nestle USA, Inc. v. Doe, 593 U.S. 628, 638 (2021).

v. Fessenden Sch., 624 F. Supp. 3d 36, 42 (D. Mass. 2022); see also Ricchio v. Bijal, Inc., 424 F. Supp. 3d 182, 193 (D. Mass. 2019) (noting that the differences in *mens rea* requirements between the criminal provision of the TVPA and civil provision of the TVPRA in subsequent amendments). In 2008, Congress amended Section 1595 to expand the private right to allow plaintiffs to sue defendants who are not just direct perpetrators of human trafficking violations, but also those who are involved indirectly with such violations. Nestle USA, 593 U.S. at 638 (2021) (citations omitted); 18 U.S.C. § 1595(a); F.C. v. Jacobs Sols. Inc., 790 F. Supp. 3d 1158, 1174 (D. Co. 2025) ("The TVPRA . . . allows [] plaintiffs to sue those who knowingly benefit from participation in a venture that engages in forced labor or trafficking when the beneficiary had actual or constructive knowledge of such practice." (citing 18 U.S.C. §§ 1589, 1590, 1595)). Accordingly, Section 1589 defines the substantive criminal offense of forced labor and Section 1595 independently provides the separate civil enforcement mechanism that allows victims to sue for violations. 18 U.S.C. §§ 1589, 1595.

In their motion to dismiss, Defendants misconstrue the statutory relationship between § 1589 and § 1595(a) and inappropriately rely on a non-operative complaint in their pleading. [ECF No. 18 at 3]. Plaintiffs' original complaint brought Count VI, their TVPRA claim, under 18 U.S.C. § 1589 rather than 18 U.S.C. § 1595 *et seq*. Defendants' reliance on the original complaint mischaracterizes the operative pleading. See InterGen N.V. v. Grina, 344 F.3d 134, 145 (1st Cir. 2003) (explaining that "[a]n amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader."). In their Amended Complaint, Plaintiffs invoke 18 U.S.C. § 1595 *et seq.* and expressly reference both § 1589 as the substantive violation and § 1595(a) as the civil enforcement mechanism. [Am. Compl. ¶¶ 1, 16, 68–70]. Therefore, Plaintiffs have pleaded their claim correctly.

11

Defendants argue in the alternative that if the TVPA provides a private right of action, any civil action under 18 U.S.C § 1595(a) "must be stayed pending criminal investigation or prosecution" and that Plaintiffs may only assert a TVPA claim after the conclusion of a criminal matter brought by the Attorney General's Office. [ECF No. 18 at 3]. Defendants' interpretation of the law is erroneous.

Despite Defendants' unsupported assertions to the contrary, Section 1595(a) unambiguously creates a private right of action without requiring any accompanying criminal proceeding. 18 U.S.C. § 1595(a); B.D.G. v. Choice Hotels Int'l, Inc., No. 2:22-CV-3202, 2023 WL 5935646, at *3 (S.D. Ohio Sept. 12, 2023) ("A § 1595(a) claim can stand alone, and civil defendants need not have committed the underlying criminal sex trafficking offense under § 1591." (citations omitted)); Charles Doyle, CONG. RSCH. SERV., R40190, *The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions* (2026), at 15–16. In the present case, there is no reference to a criminal action or investigation which would impact this ongoing civil matter. If there were, the matter would not be *dismissed* but rather stayed pending the final adjudication of the criminal case. 18 U.S.C § 1595(b)(1) ("Any civil action filed under subsection (a) shall be *stayed* during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim." (emphasis added)). However, there is no requirement under the TVPRA for a criminal case to be brought prior to filing a civil action.

    ii.    *There is no obligation on Plaintiffs to seal the matter.*

Defendants additionally argue, without any support from case law, that Plaintiffs' TVRPA claim should be dismissed because Plaintiffs did not file it under seal. [ECF No. 18 at 3]. Specifically, Defendants contend that Plaintiffs cannot proceed with a civil action under § 1595(a) unless the action is sealed pending the outcome of a criminal indictment against Defendants. [Id.]

12

As discussed above, there is no requirement for a criminal action to be initiated prior to a civil plaintiff suing under the TVPRA's private right of action in Section 1595. Defendants' arguments regarding criminal proceedings and sealing requirements are unpersuasive and irrelevant to this case.

    *iii.*    *Sufficiency of Plaintiffs' TVPRA Claim*

To pursue a civil remedy for a forced labor claim under § 1595(a), Plaintiffs must allege facts showing that Defendants either directly perpetrated a violation of the TVPA or "knowingly benefit[ed], . . . from participation in a venture which that person *knew or should have known* has engaged in an act in violation of [the TVPA]." 18 U.S.C. § 1595(a) (emphasis added). For the burden of proof in a civil matter, "[t]he phrase 'knew or should have known,' echoes common language used in describing an objective standard of negligence." Riccho v. Bijal, Inc., 424 F. Supp. 3d 182, 193 (D. Mass. 2019) (citing M.A. v. Wyndham Hotels & Resorts, Inc., 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019) (allowing claims of liability under the TVPRA to proceed against two hotels and finding that the statute "invokes a negligence standard.") (citing cases)).

The relevant criminal provision of the TVPA that provides the reference violation for Plaintiffs' civil suit is the provision prohibiting forced labor, 18 U.S.C. § 1589. This provision prohibits knowingly obtaining labor through,

> (1) force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) serious harm or threats of serious harm to that person or another person;
> (3) abuse or threatened abuse of law or legal process; or
> (4) any scheme, plan, or pattern intended to cause the person to believe that failure to perform labor would result in serious harm or physical restraint.

18 U.S.C. § 1589(a); see United States v. Papantoniadis, 165 F. 4th 65, 97 (1st Cir. 2026) (affirming the district court's conviction of a criminal defendant charged with forced labor under 18 U.S.C. §

13

1589(a)). The phrase "serious harm" in the context of forced labor, extends to non-physical coercion, including financial or reputational harm and threats of deportation. See Papantoniadis, 165 F. 4th at 77–78 (citing 18 U.S.C. § 1589(c); United States v. Bradley, 390 F.3d 145, 151 (1st Cir. 2024), vacated on other grounds, 545 U.S. 1101 (2005); United States v. Chaudhri, 134 F.4th 166, 186–87 (4th Cir. 2025)).

For liability to attach under Section 1595(a), Plaintiffs must connect the alleged conduct to one of the violations of Section 1989 and provide sufficient facts to allege causation between the coercion and the Plaintiffs' continued labor. See Adia v. Grandeur Management Inc., 933 F.3d 89, 93 (2nd Cir. 2019) (finding that plaintiff plausibly alleged claims for forced labor under subsection 1589(a)(3) by providing the court with explicit threats made by his employer to "expose him to deportation" finding that the threats "constituted a claim of abuse of the legal process."); United States v. Kalu, 791 F.3d 1194, 1212 (10th Cir. 2015) (finding that threats that immigrant nurses' visas would be revoked and that they would be deported and financially ruined were sufficient to constitute threats of serious harm under the TVPA); Elat v. Ngoubene, 993 F. Supp. 2d 497, 525 (D. Md. 2014) (collecting cases) ("[I]n the majority of the cases in which the plaintiffs alleged threats of deportation in a TVPRA claim . . ., the courts noted that the defendants made multiple threats of deportation, often accompanied by threats of other harm, and/or threatened to take action to have the plaintiffs deported.").

In their Amended Complaint, Plaintiffs make vague references to potentially exploitive conduct but fall short on the information necessary to bridge the plausibility threshold at this stage of litigation. Plaintiffs allege that Defendants "exploited a number of their employees through the use of force, fraud, or coercion." [Am. Compl. ¶ 39]. Additionally, Plaintiffs further allege that Defendants exploited some employees who had "histories of substance abuse disorders by

14

purchasing and supplying these employees with drugs to maintain them under their employ." [Id.] Further, Plaintiffs allege that Defendants "exploited labor through some individuals by trafficking them into the United States and forcing them to repay their dues in exchange for labor." [Id. ¶ 40].

At the motion to dismiss stage, Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face," and to give appropriate notice to the Defendants regarding what they are expected to defend. Twombly, 550 U.S. at 570; Educadores Puertorriquenos en Accion, 367 F.3d at 68. The TVPRA allegations in the Amended Complaint consist primarily of conclusory statements without the factual content necessary to evaluate whether these allegations state a claim under § 1589. [Am. Compl. ¶¶ 39–41, 68–70]. Allegations that named Plaintiffs or potential class members, received drugs from Defendants, without more detail as to how the provision of drugs compelled labor, fail to state a proper claim under the TVPA. Equally, Plaintiffs do not provide enough information to support their trafficking allegations such as when it occurred, or whether this conduct even pertains to the named Plaintiffs in the suit. Therefore, the Amended Complaint fails to state a proper claim for the trafficking allegations. See McLeod v. Fessenden Sch., 624 F. Supp. 3d 36, 43 (D. Mass. 2022)  (dismissing an action under § 1595(a) because the Plaintiff did not sufficiently allege facts for the court to infer that a "commercial sex act" occurred in violation of the TVPA); Iqbal, 556 U.S. at 681.

This Court recognizes that Plaintiffs need not *prove* their claims at the pleading stage. However, they must allege sufficient factual matter to support a plausible claim. See Ricchio, 853 F.3d at 557 (reversing dismissal of TVPRA claims where factual allegations and reasonable inferences drawn in plaintiff's favor were "sufficient to pass muster under the plausibility standard"). Plaintiffs must connect the alleged coercive conduct of Defendants to one of the prohibited means enumerated in § 1589(a) to compel labor. See Bradley, 390 F.3d 145 at 150–52.

They have not done so. Accordingly, the Motion to Dismiss as to Count VI is **<u>GRANTED</u>**; however, the Count is dismissed without prejudice and Plaintiffs shall be given leave to amend their Complaint to provide proper factual support for their claim. <u>See</u> Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); <u>Zenith Radio Corp. v. Hazeltine Rsch.</u>, 401 U.S. 321, 330 (1971) ("it is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court.")

### C. Individual Liability of Defendants Rosa and Dias

According to Defendants' Renewed Motion to Dismiss, this Court should dismiss individual Defendants Alex Rosa and Wendy Dias because Plaintiffs failed to "pierce the corporate veil" when naming them as parties in this suit. [ECF No. 18 at 2, 4–5]. Plaintiffs rebut this assertion and maintain that both Defendants are "individually liable." [ECF No. 19 at 9–10]. This Court agrees with the Plaintiffs.

Defendants characterize this case as "a pay dispute" between Plaintiffs and the three Corporate Defendants, arguing that individual liability requires "commingling of assets" or "acting with any sense of illegitimacy." [ECF No. 18 at 4–5 (citing <u>My Bread Baking Co. v. Cumberland Farms, Inc.</u>, 233 N.E.2d 478, 751 (Mass. 1968))]. Defendants' arguments are misplaced, as <u>My Bread Baking Co.</u>, addresses the circumstances under which a court may disregard the corporate form to reach a corporation's assets or owners. Therefore, the citation to <u>My Bread Baking Co.</u> is unavailing. The issue before the Court is whether an individual may be liable under the FLSA, the MERA, MCRA, the MFWL, and the TVPRA.[10]

---

[10] While Defendants did not expressly challenge individual liability under FLSA, MERA and MCRA, the Court read Defendants arguments to consider all pending claims against Defendants Rosa and Dias.

16

Plaintiffs allege that Rosa and Dias held management roles and functioned as "joint employers," and note in their pleadings that Wendy Diaz is registered as the President, Treasurer, and Secretary; and Alex Rosa is the Vice President and Director, of Defendant New American Used Auto Parts, Inc. [Am. Compl. ¶¶ 42–47; ECF No. 19-2].[11] See Watterson, 987 F.2d at 3–4. Defendants, on their part, refer to the same Defendants as "principal shareholders," but give the Court no information of whether they exerted "operational control," or qualify as "employers" under the relevant statutes. [ECF No. 18 at 4–5].

Defendants frame this issue as one of corporate veil-piercing, but that framework is inapplicable. As discussed below, each claim brought by the Plaintiffs impose liability on individuals who exercise control over employment practices or are defined as an "employer" under the applicable statute.

### i.   Individual Liability Under the FLSA, MCRA, and MERA

Under the FLSA, individual liability attaches where a person "was in a position to exert substantial authority over corporate policy relating to employee wages" and caused the corporation to compensate or not compensate employees in accordance with the statute. Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 48-9 (1st Cir. 2013); Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983) (citing cases); see also Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668, 678 (1st Cir. 1998) ("*Agnew* 's economic reality analysis focused on the role played by the corporate officers in causing the corporation to undercompensate employees . . . . In addition to direct evidence of

---

[11] Courts "may take judicial notice of facts which are capable of being determined by an assuredly accurate source." Does 1-6 v. Mills, 16 F.4th 20, 26 n.3 (1st Cir. 2021) (quotation marks omitted). Plaintiffs appended an exhibit of a business entity summary from the website of the Secretary of the Commonwealth of Massachusetts to their opposition brief, which courts in this District consider to be, "an assuredly accurate source." Miller v. Siemens Med. Sol. USA, Inc., No. 1:24-cv-12854-JEK, 2025 WL 2625269, at *4 n.2 (D. Mass. Sept. 11, 2025) (citing cf. Gent v. CUNA Mut. Ins. Soc'y, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of government website)).

such a role, other relevant indicia may exist as well—for example, an individual's operational control over significant aspects of the business and an individual's ownership interest in the business."). An individual may be jointly and severally liable for unpaid wages if they are considered an "employer" or "corporate officer with operational control of a corporation's covered enterprise." See Manning, 725 F.3d at 48 (citing cases).

At this stage, the pleading standard is satisfied where the complaint alleges that an individual was in a position to exert substantial authority over corporate wage policy and caused the corporation to compensate or not compensate its employees. See Manning, 725 F.3d at 47–48. Rosa and Dias' management designations from New American Used Auto Parts, Inc.'s business entity summary and "joint-employer authority," raises a plausible inference of individual FLSA liability. [Am. Compl. ¶¶ 42–47]; see Chao v. Hotel Oasis, Inc., 493 F.3d 26, 34 (1st Cir. 2007) (affirming the district court judgment that held the president of the corporation personally liable for violations of the FLSA); see also Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 148 (3rd Cir. 2014) (If a joint employment relationship is established, "each joint employer may be held jointly and severally liable for the FLSA violations of the other, in addition to direct liability for its own violations."); see also Agnew, 712 F.2d at 1511 (citing cases).

The FLSA anti-retaliation provision is even broader and covers "any person" who retaliates against employees asserting their rights. 29 U.S.C. § 215(a)(3).

Similarly, the MCRA and MERA impose liability on "any person" who engages in the prohibited conduct without regard to corporate form. Mass. Gen. Laws c. 12, § 11H; Mass. Gen. Laws c. 93, § 102 ("All persons within the commonwealth. . . whose rights under the provisions of subsection (a) have been violated may commence a civil action").

18

*ii.    Individual Liability Under the Massachusetts Fair Wage Law ("MFWL"), Mass.*

*Gen. Laws ch. 151, §§ 1, 7; unlawful retaliation in violation of both the MFWL,*

*Mass. Gen. Laws ch. 151, §§ 19(1),(5) and the Massachusetts Wage Act ("MWA"),*

*Mass. Gen. Laws ch. 149, § 148A*

The Massachusetts Fair Wage Law ("MFWL") imposes liability on corporate officers and agents who control a corporation's employment practices. O'Leary v. New Hampshire Boring, Inc., 176 F. Supp. 3d 4, 12 n.5 (D. Mass. 2016) (Under the Massachusetts Fair Wage Law, "personal liability attaches to the officer or agent of [the] corporation who pays or agrees to pay any employee less than the overtime rate of compensation required."). The Massachusetts Wage Act ("MWA"), imposes a "categorial liability on a company's president and treasurer" and any officer or agent managing a corporation for Wage Act violations. See Segal v. Genitrix, LLC, 87 N.E.3d 560, 567 (Mass. 2017).

Similarly, the retaliation protections for MFWL and MWA, under Chapter 151, § 19 expressly identifies officers and agents as individually liable and provide in relevant part that "[a]ny employer or the officer or agent of any corporation" who knowingly pays wages below applicable rates is personally liable. Mass. Gen. Laws c. 151, § 19.

*iii.    The TVPRA*

As discussed previously, [*supra* IV.B.i.], the TVPRA similarly imposes direct individual liability. Section 1595(a) extends civil liability to "whoever knowingly benefits. . . financially or by receiving anything of value, from participation in a venture" that the person knew or should have known violated the TVPA. 18 U.S.C. § 1595(a). The legitimacy of a corporate business does not preclude a plaintiff from suing individuals whose actions violate the TVPA. See Adia, 933 F.3d

19

at 93; see also Paguirigan v. Prompt Nursing Employment Agency LLC, 286 F.Supp.3d 430 (E.D. N.Y. 2017).

Here, Plaintiffs would have to allege that Defendants Rosa and Diaz knowingly benefited from violations of the TVPRA to hold them individually liable. As noted previously, *supra,* Plaintiffs have failed to establish a viable claim under the TVPRA but will be given leave to amend. Accordingly, the insufficient pleading for this specific claim does not preclude individual liability under an expanded set of facts.

        *iv.    Piercing the corporate veil is not necessary to hold Defendants liable under these statutes.*

Defendants' veil-piercing objection is a red herring, as Plaintiffs sufficiently allege that the Individual Defendants meet the role of "employer" for the purposes of their employment-related claims, or otherwise plead conduct sufficient for individual liability on their non-employment claims (excluding the TVPRA claim). The complaint alleges that Rosa and Diaz held management roles and functioned as "joint employers" with respect to the corporate Defendants, [Am. Compl. ¶¶ 42–47], and Plaintiffs argue that the individual defendants "operate Defendant Corporations as either an alter ego of themselves and/or failed to operate Defendant Corporations as legally separate entities apart from themselves. [Id. ¶ 47; ECF No. 19 at 10]. Plaintiffs also include the Business Entity Summary for New American Used Auto Parts, Inc. which lists Defendants in roles of President, Treasurer, Secretary, Vice President, and Director. [ECF No. 19-2]. Defendants however, provide no evidence or argument to the Court that Defendants Rosa and Dias did not exert operational control or authority over the compensation of their employees, or that Defendants operated the corporations as legally separate entities. [See generally ECF No. 18].  While the allegations are not elaborate, they provide sufficient factual allegations. Absent further argument

or evidence from Defendants about the propriety of dismissal, the Court refrains from dismissing the individual Defendants from this action. Accordingly, Plaintiffs have met their burden to plausibly allege that Defendants Rosa and Dias exert sufficient control to face individual liability under the relevant statutes.

For the reasons stated, Defendants' motion to dismiss as to Counts II, III, and V regarding individual defendants Rosa and Dias is **DENIED**.[12]

### D. Statute of Limitations: Plaintiff Santiago Tejada

Defendants contend that Plaintiff Santiago Tejada last worked for them "approximately [in] 2021" and his claims are time-barred under the applicable statute of limitations. [ECF No. 18 at 5]. Plaintiffs offer a contrary assertion that Plaintiff Tejada, "like the other Plaintiffs, worked for Defendants for several years, up until as late as 2025." [ECF No. 19 at 10-11].

The statute of limitations is an affirmative defense, and Defendants bear the burden of establishing the affirmative defense. Fed. R. Civ. P. 8(c). Dismissal under Rule 12(b)(6) on statute of limitations grounds is appropriate only when "the facts establishing the defense are definitively ascertainable from the complaint" and those facts "suffice to establish the affirmative defense with certitude." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006); Rodi v. S. New Engl. Sch. of Law, 389 F.3d 5, 12(1st Cir. 2004). Here, Defendants' assertion that Santiago Tejada terminated his employment in 2021 is unsupported by evidence in the record. Where such factual questions remain unresolved, a statute of limitations defense cannot succeed at this pleading stage. See Echevarria-Roman v. Miami Durable Med. Equip., Inc., No. CV 06-1829 (ADC), 2008 WL 11357918, at *6 (D.P.R. Sept. 18, 2008) (citing Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001) ("[I]t is. . . well settled that, for dismissal to be allowed on the basis of an

---

[12] As noted, *supra*, Plaintiffs' claims for Count VI under the TVPRA are dismissed for other reasons.

affirmative defense, the acts establishing the defense must be clear 'on the face of the plaintiff's pleadings.'")).

Therefore, the Court will not bar claims brought by Plaintiff Santiago Tejada at this time and the motion to dismiss as to Santiago Tejeda is **DENIED**. Defendants may renew their arguments for their affirmative defense later in this litigation.

### E. Compliance with Local Rule 7.1(a)(2)

It has been brought to the attention of the Court that several motions have been filed where counsel failed to meet and confer before filing. [ECF No. 19 at 6]. The parties are reminded that it is their obligation to comply with Local Rule 7.1(a)(2) to avoid unnecessary motion practice. Failure to comply with Local Rule 7.1(a)(2) may result in denial of the relief sought.

## V.   CONCLUSION

For the forgoing reasons, Defendant's Partial Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.** Plaintiffs' claim under the TVPA is dismissed without prejudice; Plaintiffs shall have 30 days from today to file a second amended complaint in accordance with this order. Leave to amend is restricted to two limited purposes: amending Plaintiffs' TVPRA claim in accordance with this order, and amending the class allegations as indicated in footnote two. The Court will not revisit its rulings made here on Plaintiffs' other claims in a future motion to dismiss.

**SO ORDERED.**

Dated: March 20, 2026

　/s/ Margaret R. Guzman　
Margaret R. Guzman
United States District Judge

22